RYAN TYZ (CSB NO. 234895)
ryan@tyzlaw.com
CIARA MCHALE (CSB No. 293308)
ciara@tyzlaw.com
STEPHANIE ALVAREZ SALGADO (CSB No. 334886)
stephanie@tyzlaw.com
TYZ LAW GROUP PC
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Plaintiff
Fandom, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FANDOM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual,<br><br>Defendant. | Case No: 3:26-cv-01354<br><br>**PLAINTIFF FANDOM, INC.'S *EX PARTE* APPLICATION FOR ORDER PERMITTING EXPEDITED DISCOVERY**<br><br>Complaint Filed:    February 13, 2026 |

# TABLE OF CONTENTS

Page

I. FACTUAL BACKGROUND ................................................................................ 1

    A. Defendant's Harassment Campaign and Escalation ............................................ 2

    B. Fandom Cannot Identify Defendant Without the Discovery it Seeks.................. 4

II. GOOD CAUSE EXISTS FOR FANDOM TO SERVE THE PROPOSED SUBPOENAS TO IDENTIFY DEFENDANT ................................................................. 5

    A. Fandom Identifies Doe Defendant with Sufficient Specificity ............................ 6

    B. Fandom Has Identified All Previous Steps Taken to Locate Defendant ............. 8

    C. Fandom Has Sufficiently Pled its Claims to Survive Dismissal .......................... 8

        i. Fandom has Standing to Assert Claims on Behalf of Fandom Employee ...................................................................................... 8

        ii. Fandom States a Claim for Defamation (Libel Per Se) ........................... 9

        iii. Fandom States a False Light Claim ........................................................ 10

        iv. Fandom States a Claim for Intentional Infliction of Emotional Distress.................................................................................................... 11

        v. Fandom States a Claim for Intrusion Upon Seclusion........................... 12

        vi. Fandom States a Claim for Public Disclosure of Private Facts ............. 12

        vii. Fandom States a Claim for Harassment Under CCP § 527.6 ................ 13

        viii. Fandom States a Claim for Doxing Under CCP § 1708.89 .................... 14

        ix. Fandom States an Intentional Interference with Contractual Relations Claim......................................................................................... 14

    D. Fandom is Reasonably Likely to Identify and Can Then Serve Defendant Based on the Proposed Subpoenas....................................................... 15

III. CONCLUSION................................................................................................... 16

**TABLE OF AUTHORITIES**

Page

**CASES**

*Balla v. Hall*,
    59 Cal. App. 5th 652 (2021) ........................................................................ 11

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    No. CV 16-1972, 2018 WL 650316 (4th Cir. Feb. 1, 2018)............................ 15

*Briganti v. Chow*,
    42 Cal. App. 5th 504 (2019) .......................................................................... 9

*Camargo v. Miltiadous*,
    No. 14-CV-04490-JSC, 2015 WL 1951799 (N.D. Cal. Apr. 29, 2015) ................. passim

*Chaconas v. JP Morgan Chase Bank*,
    713 F. Supp. 2d 1180 (S.D. Cal. 2010)............................................................ 12

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
    No. C-14-03236-RMW, 2015 WL 3488923 (N.D. Cal. June 2, 2015) ........................ 14

*Columbia Ins. Co. v. seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. Mar. 8, 1999) ...................................................... 6, 8

*Cordova v. Huneault*,
    No. 25-CV-04685-VKD, 2025 WL 2535104 (N.D. Cal. July 16, 2025)...................... 15

*Dallas Buyers Club LLC v. Doe-69.181.52.57*,
    No. CV 16-01164-JSC, 2016 WL 4259116 (N.D. Cal. Aug. 12, 2016)...................... 16

*G.N. Iheaku & Co. Ltd. v. Does 1-3*,
    No. CV 14-02069 LB, 2014 WL 2759075 (N.D. Cal. June 17, 2014) ........................ 6

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) .......................................................................... 5

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001) .......................................................................... 12

*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
    143 Cal. App. 4th 1284 (2006) ................................................................... 9, 13

*OpenMind Solutions, Inc., OpenMind Solutions, Inc. v. Does 1–39*,
    No. 11–3311, 2011 WL 4715200 (N.D.Cal. Oct. 7, 2011)................................... 6

*Osuna v. LaVoice*,
    No. 1:24-CV-01122-KES-SKO, 2025 WL 2636267 (E.D. Cal. Sept. 12, 2025) ........... 10

*Plumb v. Stahl*,
    54 Cal. App. 645 (Cal. Ct. App. 1921) ........................................................ 10

*Ramirez v. Midland Credit Mgmt., Inc.*,
No. 22-CV-02772-VC, 2023 WL 2277108 (N.D. Cal. Feb. 27, 2023) ......................... 10

*Semitool, Inc. v. Tokyo Electron Am.*, Inc.,
208 F.R.D. 273 (N.D. Cal. 2002) ................................................................................ 6

*UMG Recordings, Inc. v. Doe*,
No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008)......................... 15, 16

*Williams v. Cnty. of Monterey,*
No. 19-CV-01811-BLF, 2020 WL 353552 (N.D. Cal. Jan. 21, 2020) ........................... 11

**OTHER AUTHORITIES**

Cal. Civ. Proc. Code § 1708.89 ................................................................................... 14

Cal. Civ. Proc. Code § 527.6 ...................................................................................... 13

Fed. R. Civ. P. 26(f) ................................................................................................. i, 6

Fed. R. Civ. P. 4 ....................................................................................................... 16

N.D. Cal. Civ. L.R. 26-1 ............................................................................................. i

N.D. Cal. Civ. L.R. 7-10 ............................................................................................ i

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Plaintiff Fandom, Inc. will and hereby does apply *ex parte*, pursuant to Civil Local Rules 7-10 and 26-1, for an order authorizing Plaintiff to serve targeted third-party subpoenas prior to the Rule 26(f) conference for the purpose of identifying and enforcing its rights against Defendant John Doe. Plaintiff brings this *ex parte* application because Defendant has engaged in the conduct alleged in Fandom's Complaint anonymously (i.e. through usernames and other aliases) and cannot be served absent third-party discovery, and because delay risks the loss of critical identifying information maintained by online service providers and internet service providers for the platforms Defendants is using for his unlawful conduct. Fandom therefore seeks leave to serve narrowly tailored subpoenas on these online platforms and internet service providers to obtain identifying information associated with Defendant's unlawful conduct. The proposed subpoenas are attached as Exhibits A through E to the concurrently filed Declaration of Ciara McHale in support of this application.

This application is based on this Notice, the accompanying *Ex Parte* Application and Memorandum, the concurrently filed declarations of Gabby Parker and Ciara McHale and exhibits thereto, all pleadings and previously filed documents in this action, the Court's files, the arguments of counsel, and any other matter that the Court may properly consider.

## ISSUE TO BE DECIDED

Whether good cause exists under Federal Rule of Civil Procedure 26(d)(1) to permit Plaintiff to serve targeted third-party subpoenas prior to the Rule 26(f) conference for the sole purpose of identifying Defendant John Doe, whose identity is unknown, where the proposed subpoenas are narrowly tailored, necessary to name and effect service on Defendant in this lawsuit, and required to prevent ongoing, escalating harm to Fandom and its employee and risk that the needed identifying information will be lost if discovery is delayed.

## MEMORANDUM OF POINTS AND AUTHORITIES

Fandom seeks *ex parte* relief authorizing limited early discovery to identify Defendant John Doe, an anonymous individual who is actively engaged in ongoing and escalating harassment of Fandom and its staff, including publishing personal information and defamatory statements about one of Fandom's employees ("Fandom Employee"). Most recently, Defendant has taken to making an onslaught of anonymous posts on Craigslist in which he impersonates Fandom Employee, publicly discloses his home address or location, and, in at least one known instance, falsely claims as Fandom Employee, "I . . . will also trade for sex with me and my spouse." This conduct is highly offensive and harmful, and only escalating in frequency and intensity. Fandom needs expedited discovery into Defendant's identity so that it can stop him.

Specifically, Fandom seeks leave to serve subpoenas on Google, Discord, Reddit, and Craigslist—the platforms Defendant is using to wage and escalate his harassment campaign—to obtain sufficient information to identify him. Fandom also seeks to serve a subpoena on Comcast, the internet service provider (ISP) associated with the IP address linked to Defendant's former account on Fandom's GameFAQs platform, his restriction from which instigated this conduct. The subpoenas Fandom proposes to serve on these third parties are attached as Exhibits A through E to the Declaration of Ciara McHale ("McHale Decl.") in support of the application.

Good cause exists for the *ex parte* discovery Fandom seeks. Fandom cannot ascertain Defendant's identity without subpoenas to the above service providers that control the relevant account(s) and IP records. Without that information, it is unable to provide notice of this lawsuit or application on Defendant. And Fandom requires immediate relief because Defendant's harassment and defamation are ongoing and accelerating, and because the identifying data sought is likely retained only for limited periods and may be lost if discovery is delayed. The Court should grant Fandom's application for the narrow discovery it seeks so that it can unmask Defendant, serve him, and stop his unlawful and dangerous conduct.

## I.    FACTUAL BACKGROUND

Fandom filed this action to stop an ongoing, multi-year campaign of harassment, threats, and intimidation by Defendant, a disgruntled former user of Fandom's popular video gaming

website and community forum, GameFAQs, whose real identity is unknown to Fandom. Comp. ¶ 1. Defendant was an active participant on the GameFAQs website and discussion boards until he was restricted from the site in 2024 for violating Fandom's content and moderation policies. *Id.* ¶¶ 2, 24–26. Defendant thereafter embarked on a retaliatory campaign targeting Fandom and its staff, focusing much of his ire on Fandom Employee, a GameFAQs moderator.  *Id.* ¶¶ 2, 28.

### A.      Defendant's Harassment Campaign and Escalation

Since 2024, Defendant has used multiple online platforms, including Reddit, YouTube, Discord, and most recently Craigslist, to publish abusive, threatening, and defamatory content about Fandom and Fandom Employee and to disseminate private identifying information about Fandom Employee. Comp. ¶¶ 3, 30–34.  Defendant has engaged in this behavior across platforms under the names "Socialmediaisbroken," "SMIB," "CEDEFEATED," and others.  For example:

- In 2024, Defendant launched several subreddits on the Reddit platform to coordinate and amplify his harassment of Fandom and Fandom Employee, including r/GameFAQsdeathmatch, r/GameFAQsCurrentEvents, r/GameFAQsModeration, r/Tailswasright, r/GameFAQsDramaHub, r/theconglomerate, r/GFconglomerate, and r/April15Twenty24. Compl. ¶ 30. In 2024, Defendant used these subreddits to make statements and threats directed at Fandom and Fandom Employee, claiming he would "descend on" Fandom's headquarters in San Francisco to confront Fandom and Fandom Employee.  *See id.*; McHale Decl. Ex. F.  Defendant then stated in a follow-up post that he had traveled to San Francisco but was unable to complete his visit to Fandom's headquarters, expressing a desire to return.  Compl. ¶ 33.

- Defendant also operates a YouTube account under the username "Smib Thegod", available at https://www.youtube.com/@SmibThegod-oz5wx, which he has used to post videos and commentary relating to his grievances and campaign against Fandom and Fandom Employee.  Compl. ¶ 30; Parker Decl. ¶ 7.

- Defendant also appears to have taken his harassment campaign to the Discord platform, under Discord user ID 1385464805242175499 and/or username

"augustwindsareuponyou," where he sent at least one harassing message to another Fandom employee who filed a police report about the message. Parker Decl. ¶ 8. In 2025, Defendant appears to have escalated and expanded his harassment to include Fandom Employee's family members, as during this time, Fandom Employee's mother received a series of harassing phone calls from unknown individual(s) believed to be Defendant. Compl. ¶ 35.

Most recently, beginning in January 2026, Defendant has escalated his tactics further, now on Craigslist. Specifically, Defendant has made several posts on Craigslist advertising the sale of goods in which he impersonates Fandom Employee and offers goods for sale, disclosing Fandom Employee's private home address and location with an intent to draw strangers to the employee's home. Comp. ¶¶ 3, 36. In the posts, Defendant (1) states he is Fandom Employee, providing his name and specifying his role at Fandom, (2) claims to be offering an item(s) for sale in exchange for money or, in at least one case, to "trade for sex" with Fandom Employee and/or his spouse, and (3) discloses Fandom Employee's private home address or location, thus inviting strangers to show up at Fandom Employee's house where he lives with his family. Comp. ¶ 36; Parker Decl. ¶ 11, Exs. 1, 2. Defendant appears to have also started responding to others' posts on Craigslist with messages impersonating Fandom Employee, instructing the reader to go to Fandom Employee's home to complete a trade or transaction, providing Fandom Employee's home address and other personal information, and even inviting those reading and responding to the Craigslist post to let themselves into Fandom Employee's home. Comp. ¶ 3; Parker Decl. ¶ 11.

As a result of these posts, strangers have come to Fandom Employee's home on multiple occasions in January and February 2026. Comp. ¶¶ 37–38; Parker Decl. ¶ 12. These strangers were verbally aggressive with Fandom Employee's spouse and caused severe distress to Fandom Employee and his family. *Id.* During a February 12, 2026 incident, an unknown individual arrived at Fandom Employee's residence and tried to physically enter Fandom Employee's home. Comp. ¶ 38; Parker Decl. ¶ 12. Because Defendant now appears to be responding to others' Craigslist posts or private messages and due to his anonymity, it has become impossible for Fandom and Fandom Employee to track the extent of Defendant's campaign, which is only escalating.

Defendant's conduct has caused and continues to harm Fandom Employee, causing him serious fear and emotional distress and threatening his and his family's physical safety and mental and emotional wellbeing. Comp. ¶ 5; Parker Decl. ¶ 13.  Defendant's conduct has also harmed and continues to harm Fandom directly, including by impairing Fandom's ability to deploy staff to carry out essential moderation functions on its services, undermining Fandom's efforts to provide a safe workplace, and forcing Fandom to divert resources and attention away from its ordinary operations to address ongoing risk and irreparable harm to its personnel, facilities, and business. Comp. ¶ 6; Parker Decl. ¶¶ 10, 13.

**B.    Fandom Cannot Identify Defendant Without the Discovery it Seeks**

As described above, Defendant has attempted to shield his unlawful conduct through use of online aliases, but his ISP, Comcast, and the platforms on which he has conducted his campaign—Craigslist, Reddit, Discord, and YouTube—can identify Defendant. These third parties and Defendant's information and conduct linked to them are listed below.

| Platform | Account Name/ Identifier | Description of Account Posts |
|---|---|---|
| Reddit | • Socialmediaisbroken<br>• CEDEFEATED<br>• Unknown creator of the following subreddits:<br>  ○ **r/GameFAQsdeathmatch**<br>  ○ **r/GameFAQsCurrentEvents**<br>  ○ **r/GameFAQsModeration**<br>  ○ **r/Tailswasright**<br>  ○ **r/GameFAQsDramaHub**<br>  ○ **r/theconglomerate**<br>  ○ **r/GFconglomerate**<br>  ○ **r/April15Twenty24** | Posts threatening Fandom moderators, including Fandom Employee, and Fandom headquarters |
| YouTube/ Google | • Smib Thegod<br>• @SmibThegod-oz5wx<br>• https://www.youtube.com/@SmibThegod-oz5wx | Videos and channel showing communications with Fandom moderators |
| Discord | • Discord user ID 1385464805242175499<br>• augustwindsareuponyou | Threatening and coercive message to and about Fandom moderators |

| Craigslist | • Post ID 7911133137 (Parker Decl. Ex. 1)<br>• Parker Decl. Ex. 2 | Posts revealing Fandom's name, address, phone number, and status as a Fandom Employee, encouraging third parties to enter Fandom Employee's home, and claiming Fandom Employee is willing to "trade for sex" with him or his spouse |
| --- | --- | --- |
| Comcast | • IP address 73.208.164.74 | IP address linked to GameFAQs account registration |

Parker Decl. ¶ 14, Exs. 1, 2; Compl. ¶¶ 29–33, 36–38; McHale Decl., Exs. F–H.

Fandom has tried to identify Defendant by collecting and reviewing his online postings, videos, and messages across the multiple platforms detailed above, and reporting abusive and harassing content to platform operators. Fandom has also used internal GameFAQs tools to research IP address information associated with Defendant's GameFAQs account, which it has traced to Chicago, Illinois. Parker Decl. ¶¶ 14–17.

But Fandom's efforts have failed to uncover Defendant's identity, warranting this application. Parker Decl. ¶ 18. Fandom seeks leave of Court to serve subpoenas on the above-listed entities, requesting limited, targeted discovery to obtain information sufficient to identify Defendant, so that he may be named and served in this action. To the extent that materials provided in response to these subpoenas reveal insufficient identifying information, such as IP addresses alone, Fandom also seeks leave to serve follow-up targeted subpoenas on the ISPs that host any further IP addresses provided.

## II.    GOOD CAUSE EXISTS FOR FANDOM TO SERVE THE PROPOSED SUBPOENAS TO IDENTIFY DEFENDANT

Where the identity of a defendant is not known, the Ninth Circuit has noted that a "plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). The opportunity to

seek such discovery has become increasingly important given the ability to commit tortious acts like defamation "entirely on-line." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. Mar. 8, 1999). Under Fed. R. Civ. P. 26(d)(1), courts may authorize early discovery before a Rule 26(f) conference, generally applying a "good cause" standard to determine whether to permit it. *See Camargo v. Miltiadous*, No. 14-CV-04490-JSC, 2015 WL 1951799, at *2 (N.D. Cal. Apr. 29, 2015) (citing *Semitool, Inc. v. Tokyo Electron Am.*, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002)). To determine whether there is "good cause" for expedited discovery to identify a Doe defendant, the court apply a three-factor test, considering whether:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*Id.* (citing *OpenMind Solutions, Inc. v. Does 1–39*, No. 11–3311, 2011 WL 4715200, at *2 (N.D.Cal. Oct. 7, 2011); *Columbia Ins. Co.*, 185 F.R.D. at 578–80. Here, each of these factors strongly favors granting Fandom's application.

### A.    Fandom Identifies Doe Defendant with Sufficient Specificity

Under the first factor of the good cause test, the court will consider whether a plaintiff has "identif[ied] the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court" in its jurisdiction. *Columbia Ins. Co.*, 185 F.R.D. at 578. A plaintiff can do so by providing evidence of "specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process." *G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. CV 14-02069 LB, 2014 WL 2759075, at *2 (N.D. Cal. June 17, 2014).

Here, Fandom's Complaint and supporting evidence show that Defendant is a real person perpetrating these acts. Fandom has described Defendant's conduct in detail and identify the specific online accounts and platforms Defendant has used in his harassment campaign, including Reddit subreddits, a YouTube channel under the username "Smib Thegod," a Discord account,

and Craigslist postings by a user that impersonated the Fandom Employee and disclosed his name and private home address and made defamatory statements about him and Fandom. Parker Decl. ¶¶ 6-8, 14; Coml. ¶¶ 29-33, 36-38. These are all accounts created by a real person. Moreover, the evidence shows that the individual behind these acts is likely to be a disgruntled former GameFAQs user that has repeatedly used the same social media aliases, "Socialmediaisbroken" or "SMIB," across platforms. *See* Parker Decl. ¶¶ 4, 6, 7. This campaign thus started when the GameFAQs user believed to be Defendant was banned from GameFAQs in 2024. Comp. ¶¶ 2, 27-28. Defendant associates his removal with the Fandom employee and, indeed, has explicitly confirmed as much in public posts wanting to confront Fandom Employee, or other Fandom staff in moderation roles. Comp. ¶ 27. These facts indicate that the Defendant is an identifiable person engaging in this pattern of unlawful conduct with a retaliatory motive.

Furthermore, Defendant is subject to this Court's jurisdiction because he has purposefully directed his conduct at California and at Fandom's headquarters in San Francisco, including by issuing threats referencing and directed at Fandom and its employees at Fandom's headquarters, by claiming to have traveled to San Francisco as part of his campaign to harass and threaten Fandom and Fandom Employee, and by engaging in conduct intended to harm Fandom's operations and employees in California. Compl. ¶ 13. As described above, Defendant posted threats in a subreddit expressing a desire to "descend on San Francisco" and "establish a command center within relative walking distance of [Fandom's headquarters]." Comp. ¶¶ 32-33; McHale Decl. Ex. F. In a follow-up post, he claimed to have traveled to San Francisco and "set up shop" in a San Francisco neighborhood close to Fandom's headquarters. Comp. ¶ 33. Though he stated that he was unable to complete his visit to Fandom's headquarters during the trip, he expressed a desire to return to the state, saying "I will never give up. I will never relent." *Id.* These allegations showing harm in this forum are sufficient. *See Camargo*, 2015 WL 1951799, at *3 (finding personal jurisdiction over doe defendants where "Plaintiff allege[d] that the doe defendants made defamatory statements regarding Plaintiff, a resident of California, on the internet, thus causing foreseeable harm in California.").

**B.    Fandom Has Identified All Previous Steps Taken to Locate Defendant**

Fandom has also satisfied the second factor of the good cause test because it has "identif[ied] all previous steps taken to locate the elusive defendant." *Columbia Ins. Co.*, 185 F.R.D. at 579.  Before filing this application, Fandom undertook reasonable, good-faith efforts to identify Doe using available information and tools within its control and in the public domain. For example, Fandom reviewed and analyzed the IP address associated with Doe's GameFAQs account and used internal tools to trace it to the Chicago, Illinois area.  Parker Decl. ¶ 14–17; *see also* McHale Decl. ¶ 11.  Fandom and Fandom Employee have also attempted to obtain further information regarding Doe's identity by collecting and reviewing Defendant's online postings, videos, and messages across multiple platforms including Reddit, YouTube, Discord, and Craigslist to ascertain the poster's identity.  Parker Decl. ¶ 14–17. And Fandom Employee has repeatedly reported abusive and harassing content to platform operators and, where appropriate, requested that content be removed or accounts be moderated.  *Id.* Fandom has also consulted with law enforcement regarding Doe's threatened appearance at Fandom's headquarters, harassment of Fandom Employee and other moderators, and most recently the doxing of Fandom Employee and physical intrusions at his home. *Id.*

Despite these efforts, Fandom has been unable to ascertain Doe's true identity because the essential subscriber and technical data that could link Doe's online activity to a real-world identity is held by third-party online service providers and ISPs. Without subpoenas compelling disclosure of basic subscriber information and connection logs for the relevant accounts and IP addresses, Fandom cannot reasonably identify Doe. *See Camargo*, 2015 WL 1951799, at *4 (finding second factor satisfied where plaintiff reviewed anonymous posts to attempt to identify doe defendants, "but no information was available").

**C.    Fandom Has Sufficiently Pled its Claims to Survive Dismissal**

Under the third factor of the good cause test, courts consider whether a plaintiff's suit against an unknown defendant "could withstand a motion to dismiss." *Columbia Ins. Co.*, 185 F.R.D. at 579.  Here, Fandom has sufficiently stated each of its claims.

        i.    <u>Fandom has Standing to Assert Claims on Behalf of Fandom Employee</u>

As an initial matter, for each of its claims asserted on behalf of Fandom Employee's behalf (all but its intentional interference with contractual relations claim), Fandom has standing to assert the claims. A plaintiff may assert a claim on behalf of a third party "when (1) the plaintiff has suffered an injury in fact; (2) the plaintiff has a relationship with the third party so that it can, and will, effectively present the third party's rights; and (3) obstacles exist preventing the third party from asserting his own rights." *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284, 1297 (2006). Here, Fandom satisfies each requirement. First, Fandom has suffered an injury to its business, including through the diversion of resources and increased costs for the security and protection of Fandom Employee and its other staff. *See* Compl. ¶¶ 61, 68, 77, 88, 99, 108. Second, the relationship between Fandom and Fandom Employee "is a strong one, based as it is on [an] employer-employee relationship." *Novartis*, 143 Cal. App. 4th at 1298. Third, safety obstacles exist preventing the Fandom Employee from asserting these claims in his own right—namely, serious risk of further harassment and escalation of threats to his physical and mental safety and wellbeing. Compl. ¶¶ 1, 3; *see Novartis*, 143 Cal. App. 4th at 1298 (allowing plaintiff employer to assert invasion of privacy, intentional infliction of emotional distress, harassment, and intrusion into private affairs claims on behalf of its employees against an organization that targeted them).

### ii.    Fandom States a Claim for Defamation (Libel Per Se)

Fandom states a claim for defamation on behalf of itself and Fandom Employee. To assert a defamation claim, Fandom must allege "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injury or causes special damage." *Camargo*, 2015 WL 1951799, at *4; *see also Briganti v. Chow*, 42 Cal. App. 5th 504, 509 (2019).

Here, Fandom alleges that Defendant has committed defamation by impersonating Fandom Employee in a public, false, and defamatory Craigslist post. Defendant published the post to the general public on Craigslist. Compl. ¶ 51. In the post, Defendant impersonated Fandom Employee and falsely represented that he (as Fandom Employee) was offering goods in exchange for money or would "trade for sex" with Fandom Employee and/or his spouse. *Id.* The post also included personal identifying information, including Fandom Employee's full name, his

role as a Fandom employee and the location of his home, sufficient for readers to understand that the posting referred to Fandom Employee. *Id.* ¶ 52. Defendant's post was false and unprivileged: Defendant is not Fandom Employee, nor did Fandom Employee offer goods as a "trade for sex" as Defendant's post suggests. *Id.* ¶ 53.  Further, this statement is libel per se because it falsely imputes criminal or sexually immoral conduct that inherently tends to injure Fandom Employee in his occupation and expose him to contempt and ridicule, and by extension to injure Fandom as his employer. *See Osuna v. LaVoice*, No. 1:24-CV-01122-KES-SKO, 2025 WL 2636267, at *7 (E.D. Cal. Sept. 12, 2025) ("Libel on its face, or per se, involves a falsehood in which the defamatory nature is apparent without the necessity of explanatory matter. This may include a false allegation that a plaintiff is guilty of a crime") (internal citations omitted); *see also Plumb v. Stahl*, 54 Cal. App. 645, 646, 202 P. 468, 469 (Cal. Ct. App. 1921) ("[I]t has always been held that it is libel per se to charge a person with the commission of a crime involving moral turpitude."). This defamatory statement also caused Fandom Employee severe emotional distress, fear for personal and family safety, and substantial disruption to personal and professional life. *See* Compl. ¶ 60.  The defamatory statement likewise caused Fandom harm, including forcing Fandom to divert resources to address the consequences of Defendant's conduct and damaging Fandom's ability to maintain a safe, stable, and effective workplace free from the humiliation, emotional distress, and disruption caused by Defendant's statement.

Fandom has thus met its burden of showing that its defamation claim would withstand a motion to dismiss. *See Camargo*, 2015 WL 1951799, at *4 (finding good cause and granting plaintiff expedited discovery in connection with her defamation claim, where she "allege[d] that [named defendant] and the doe defendants made knowingly false statements about her on various internet sites which have caused her to be professionally shunned injuring [p]laintiff in her occupation and causing her damages.").

### iii.    Fandom States a False Light Claim

Fandom also adequately pleads its false light claim on behalf of Fandom Employee.  "To establish a false light claim based on a defamatory publication, a plaintiff 'must meet the same requirements' as for a defamation claim." *Ramirez v. Midland Credit Mgmt., Inc.*, No. 22-CV-

02772-VC, 2023 WL 2277108, at *2 (N.D. Cal. Feb. 27, 2023) (citing *Balla v. Hall*, 59 Cal. App. 5th 652, 687 (2021)). Here, Fandom's false light claim is based on the same statement giving rise to the defamation claim and likewise would survive a motion to dismiss. Defendant's statement, impersonating Fandom Employee and claiming Fandom Employee was willing to "trade for sex" and identifying his name, location, and position at Fandom placed Fandom Employee in false light. Compl. ¶¶ 81-89. For the reasons above, Fandom has met its burden of showing its false light claim would survive dismissal. *See Camargo*, 2015 WL 1951799, at *4 (finding good cause and granting Plaintiff expedited discovery in connection with her false light claim, where "Plaintiff allege[d] that the knowingly false statements which defendants posted…labeled her as a sociopath, thereby placing her in a false light in the public eye and causing" her harm).

                    iv.    Fandom States a Claim for Intentional Infliction of Emotional Distress

Fandom also sufficiently pleads each element of a claim for intentional infliction of emotional distress (IIED) on behalf of Fandom Employee. "The elements of an IIED claim are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Williams v. Cnty. of Monterey,* No. 19-CV-01811-BLF, 2020 WL 353552, at *6 (N.D. Cal. Jan. 21, 2020) (internal citations omitted). Here, Fandom has pled every element. The Complaint alleges in detail Defendant's extreme and outrageous conduct in the form of his yearslong, escalating harassment, defamation, and doxxing campaign. Defendant has publicly disseminated Fandom Employee's private identifying information; impersonated Fandom Employee in false and sexualized advertisements and posts; invited strangers to contact or visit Fandom Employee's home, providing his private personal home address for such contact; expanded his harassment to members of Fandom Employee's family; and tied all of these actions to Fandom and its staff, headquarters, and business, due to Fandom's enforcement of its moderation policies. Compl. ¶¶ 29-40, 64. Defendant also intended to cause, or acted with reckless disregard of the probability of causing, severe emotional distress to Fandom Employee. Compl.¶ 65. And as a direct and proximate result of this conduct, Fandom Employee

has suffered severe emotional distress, fear for his safety, and substantial disruption to personal and professional life. Compl. ¶ 66. Fandom thus adequately states an IIED claim.

### v.    Fandom States a Claim for Intrusion Upon Seclusion

Fandom has also stated a claim for intrusion upon seclusion, which "has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1185 (S.D. Cal. 2010). First, the Complaint alleges that Defendant has intruded into Fandom Employee's private life and affairs and his family home by obtaining and publicly posting Fandom Employee's full name, home address and/or sufficiently specific location details in posts offering the sale or trade of goods so that viewers of the posts would go to Fandom Employee's home. Compl. ¶¶ 36–38, 72–75. Second, the Complaint alleges that Defendant disclosed Fandom Employee's personal information in posts designed to draw unknown third parties to Fandom Employee's home under deceptive and potentially dangerous circumstances that would be highly offensive to a reasonable person. *Id.* Indeed, Defendant's plan has worked, as multiple strangers have arrived at Fandom Employee's home over the past month, with at least one person trying to physically enter without permission. *Id.* Defendant's intrusion has caused Fandom Employee significant emotional distress and fear for personal and family safety and has resulted in actual physical intrusions and harassment by unknown third parties at or near the employee's home. *Id.* ¶ 76. Using personal information to engage in repeated unwanted contact without consent, as alleged here, gives rise to a claim for intrusion upon seclusion. *See e.g. Chaconas*, 713 F. Supp. 2d at 1184 (Chase "intentionally intruded on Plaintiffs' privacy by … continuing to communicate with Plaintiffs at home and at work after receiving the cease and desist orders, and by unlawfully and intentionally communicating with Plaintiffs at least 380 times even though Defendants knew that Plaintiffs were represented.")(cleaned up). Fandom's claim would thus survive a motion to dismiss.

### vi.    Fandom States a Claim for Public Disclosure of Private Facts

Fandom sufficiently states a claim for public disclosure of private facts, which requires a showing of "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *M.G.*

*v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 631 (2001). In support of its claim for the public disclosure of private facts, Fandom alleges that Defendant publicly disclosed private facts about Fandom Employee by posting his full name and home address and/or sufficiently specific location information on public online platforms accessible to the public. Compl. ¶¶ 92, 94. This information is private, not of legitimate public concern, and was disseminated by Defendant without Fandom Employee's knowledge or permission. *See id.* ¶ 93. Defendant's disclosure also directly caused members of the public to appear at Employee's residence and contact him, even trying to enter his home. *Id.* ¶¶ 92–95. Fandom also alleges that Defendant's conduct would be highly offensive to a reasonable person. *Id.* Fandom's claim thus alleges each element of this claim, sufficient to withstand a motion to dismiss.

vii.    <u>Fandom States a Claim for Harassment Under CCP § 527.6</u>

Fandom sufficiently pleads its claim for harassment under CCP § 527.6, which it brings due to its "responsibility" and "interest in protecting its employees from harassment due to their employment with" Fandom. *Novartis*, 143 Cal. App. 4th at 1298. Fandom must allege conduct that constitutes "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Civ. Proc. Code § 527.6 (b)(3). Further, "[t]he course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." *Id.*

Here, Fandom asserts a harassment claim on behalf of Fandom Employee by alleging that Defendant has knowingly and willfully subjected Fandom Employee to a continuous course of intimidation and harassment. Again, Defendant has engaged in such harassment by publicly disseminating the Fandom Employee's private identifying information; impersonating him in false and sexualized advertisements and posts; inviting strangers to visit his home; expanding harassment to his family members; and attempting to confront Fandom and Fandom Employee at Fandom's headquarters. Compl. ¶ 103. Fandom alleges that Defendant's intimidating and harassing conduct serves no legitimate purpose and would cause any reasonable person to suffer substantial emotional distress. *Id.* ¶¶ 104–105. Finally, the Complaint alleges that Defendant's

harassment has caused Fandom Employee significant emotional distress and fear for personal and family safety and, indeed, has resulted in actual physical intrusions and harassment at his home. Compl. ¶ 106. With these allegations, Fandom sufficiently pleads a harassment claim.

### viii. Fandom States a Claim for Doxing Under CCP § 1708.89

Fandom also adequately pleads its claim for doxxing, which requires allegations that the defendant, without consent and through an electronic communication device, intentionally disseminated the plaintiff's personal identifying information with the intent to cause reasonable fear for the plaintiff's safety or that of their immediate family and to imminently incite unwanted physical contact, injury, or harassment by a third party. Cal. Civ. Proc. Code § 1708.89. Fandom pleads a claim for doxing by alleging that (1) Defendant intentionally and publicly posted Fandom Employee's personal identifying information online, including his full legal name, home address, and other identifying information sufficient to locate his residence; (2) Defendant disclosed Fandom Employee's personal identifying information without his consent and did so with the intent of placing him in reasonable fear for his (and his family's) safety; and (3) Defendant made these disclosures for the purpose of causing Fandom Employee unwanted physical contact, injury, or harassment by third parties. Compl. ¶¶112–115. Defendant's posts also directly encouraged third parties to visit Fandom Employee's home and have resulted in actual physical intrusions and harassment by unknown third parties at the home, causing Fandom Employee significant emotional distress and fear for his personal and family safety and wellbeing. Compl. ¶¶115–116. Fandom has thus adequately pleaded its claim.

### ix. Fandom States an Intentional Interference with Contractual Relations Claim

Fandom has stated a claim for intentional interference with existing contractual relations, which requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Cisco Sys., Inc. v. STMicroelectronic*s, Inc., No. C-14-03236-RMW, 2015 WL 3488923, at *5 (N.D. Cal. June 2, 2015). Here, Fandom alleges that Fandom has an employment

contractual relationship with Fandom Employee, and Defendant was at all relevant times aware that Fandom Employee was employed by Fandom. Compl. ¶¶120–121. Indeed, after Defendant's GameFAQs user privileges were restricted, Defendant intentionally targeted Fandom Employee because of his employment with Fandom and moderation on Fandom's behalf. *Id.* ¶121. Defendant thereafter engaged in a course of conduct designed to disrupt the contractual relationship between Fandom and Fandom Employee, including but not limited to publicly posting Fandom Employee's name and home address online and making threatening statements directed at Fandom Employee in which he referenced his employment with Fandom and traveling to Fandom headquarters with the intent of confronting Fandom Employee. *Id.* ¶122. Lastly, as Defendant's actions have substantially disrupted and harmed the employment relationship between Fandom and Fandom Employee. *Id.* ¶123. For example, Fandom has worked with Fandom Employee to modify Fandom Employee's job duties, alter work assignments, and implement security measures as needed, which has resulted in significant diversion of company resources to address the threats and harassment and protect Fandom Employee's physical and mental safety and well-being. *Id.* Fandom thus states a claim for intentional interference.

> **D.      Fandom is Reasonably Likely to Identify and Can Then Serve Defendant Based on the Proposed Subpoenas**

Fandom seeks to issue targeted subpoenas to the specific online service providers that Defendant has used in his harassment campaign: Craigslist, Reddit, YouTube, and Discord. McHale Decl. Exs. A–E. Fandom also seeks to subpoena Comcast, the ISP that hosts the IP address linked to Defendant's former GameFAQs account. *Id.* These entities maintain subscriber records and technical logs in the ordinary course of business, and courts routinely authorize subpoenas to such providers to produce information that will identify anonymous online wrongdoers. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity"); *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *5 (N.D. Cal. Sept. 3, 2008)(finding good cause for expedited discovery where plaintiffs could not "identify defendant, known only by its IP address, other than by a Rule 45 subpoena issued

to UCB, to examine its ISP logs."); *Cordova v. Huneault*, No. 25-CV-04685-VKD, 2025 WL 2535104, at *2 (N.D. Cal. July 16, 2025)(finding good cause for expedited discovery and allowing Plaintiff to serve a "Rule 45 subpoena on YouTube").

Here, the proposed subpoenas request basic subscriber-identifying information (such as names, physical addresses, email addresses, and telephone numbers) and relevant IP addresses and logs for the accounts tied to Defendant's misconduct. *See* McHale Decl., Exs. A–E.[1] With Defendant's identity, Fandom will then be able to amend its complaint to name and serve Defendant. In these circumstances, "there is no prejudice to the Doe Defendant in granting the requested early discovery because it 'is narrowly tailored to seek only their identity.'" *UMG Recordings, Inc.*, 2008 WL 4104214 at *4. Absent expedited discovery, however, there is a risk that the third-party platforms and ISPs in possession of identifying data for Defendant could destroy their records and that Fandom will be unable to ascertain his identity. *See id.* at *5. "[G]ranting Plaintiff . . . early discovery to identify the Doe Defendant appears to be the only way to advance this litigation." *Dallas Buyers Club LLC v. Doe-69.181.52.57*, No. CV 16-01164-JSC, 2016 WL 4259116, at *3 (N.D. Cal. Aug. 12, 2016).  Accordingly, the tailored subpoenas Fandom seeks to issue are necessary and warranted.

## III.   CONCLUSION

For the foregoing reasons, Fandom respectfully requests this Court grant its application for leave to issue the proposed subpoenas attached to the McHale Declaration and, if necessary, to issue follow-on subpoenas to any ISPs that host IP addresses that may be provided in response to the proposed subpoenas.

---

[1] To the extent that the information provided by the above-subpoenaed entities is insufficient— for example, if it is limited to only IP address records—Fandom seeks leave to issue follow-up subpoenas to any ISPs that host such IP addresses.  McHale Decl. ¶ 8.

Respectfully submitted,
TYZ LAW GROUP PC

Dated: February 18, 2026

*/s/Ciara McHale*
Ciara McHale

Attorneys for Plaintiff
Fandom, Inc.