RYAN TYZ (CSB NO. 234895)
ryan@tyzlaw.com
CIARA MCHALE (CSB No. 293308)
ciara@tyzlaw.com
STEPHANIE ALVAREZ SALGADO (CSB No. 334886)
stephanie@tyzlaw.com
TYZ LAW GROUP PC
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Plaintiff
Fandom, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FANDOM, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>A.H., an individual, and DOES 1-10,<br><br>       Defendants. | Case No: 3:26-cv-01354-LJC<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Fandom, Inc. ("Fandom"), for its complaint against Defendant A.H. and Does 1–10 ("Defendants") and alleges as follows:

### Introduction

1.      This action arises from an ongoing, multi-year campaign of harassment, threats, and intimidation carried out by Defendant A.H. ("Defendant" or "A.H."), a disgruntled former user of Fandom's popular video gaming website and community forum, GameFAQs.com ("GameFAQs"), and one or more other actors with whom he has conspired. Defendants' campaign, directed at Fandom and one of its employees, has escalated over time, and Fandom now brings this action to protect the safety and well-being of its employees and guard its business against the ongoing and imminent harm from Defendants' conduct.

2.      One or more Defendants were active participants on the GameFAQs website and discussion boards. After one or more Defendants' content was moderated and their access to Fandom's services was restricted or terminated for repeated violations of Fandom's content and moderation policies, including posting prohibited content, Defendants embarked on a retaliatory campaign targeting a Fandom employee who performs moderation duties for GameFAQs (the "Fandom Employee") and Fandom itself.

3.      Defendants have used multiple online platforms, including Reddit, YouTube, Discord, and Craigslist, to publish abusive and threatening content about Fandom and Fandom Employee and to reveal and disseminate private identifying information about Fandom Employee and disparaging content about Fandom. Fandom believes and therefore alleges that Defendants have also engaged in a campaign of harassing telephone calls to Fandom Employee's mother and spouse. Most recently, Defendant A.H. specifically, whether acting on his own or in concert with others, has escalated his tactics to post false and sexualized content on Craigslist in posts advertising the sale of goods in which he impersonates the Fandom Employee, provides the Fandom Employee's private home address, and suggests that the Fandom Employee and/or his spouse wishes to engage in sexual activity, including offers to trade sex, in a manner designed to draw strangers to the employee's home. Fandom believes and therefore alleges that Defendants, including in particular Defendant A.H., also started responding to other posts on Craigslist by

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                 - 1 -                 CASE NO. 3:26-cv-01354-LJC__

impersonating the Fandom Employee and instructing Craigslist users to go to the employee's home to complete a trade or transaction, again providing his personal information, including his home address, and further providing that those reading and responding to the Craigslist post should let themselves into Fandom Employee's home. This campaign has worked, as multiple individuals have shown up at Fandom Employee's home, even opening the front door and trying to enter the home without authorization. This has forced Fandom and Fandom Employee to engage the help of law enforcement and file this lawsuit to ensure Fandom Employee's and his family's safety and well-being.

4. One or more Defendants have also directed threats and intimidating statements at Fandom, including threats of "descending on" Fandom's headquarters in San Francisco, California, and claims of having actually traveled to San Francisco to confront Fandom and Fandom Employee.

5. Defendants' conduct has caused and continue to cause harm to Fandom Employee, causing him serious fear and emotional distress and threatening his and his family's physical safety and mental and emotional well-being.

6. Defendants' conduct has also harmed and continues to harm Fandom. Defendants' conduct, including in particular Defendant A.H.'s libelous statement impersonating Fandom Employee to state that he works at Fandom and is offering goods in exchange for sex, is intended to disparage Fandom as well as Fandom Employee and cause severe harm to Fandom's reputation. The threats to, and fear and distress experienced by, Fandom Employee also directly harm Fandom by impairing Fandom's ability to deploy staff to carry out essential moderation functions on its services, undermining Fandom's efforts to provide a safe workplace, and forcing Fandom to divert resources and attention away from its ordinary operations to address ongoing risk and irreparable harm to its personnel, facilities, and business.

7. On information and belief, Defendant A.H. has not acted alone. Defendant has agreed and conspired with Does 1–10 and other presently unidentified individuals to carry out and amplify the harassment campaign against Fandom and Fandom Employee, including by coordinating online posts, disseminating private identifying information, impersonating Fandom

Employee, encouraging third parties to contact or visit Fandom Employee's residence, and using multiple platforms and accounts to conceal participants' identities and expand the campaign's reach.

8. Accordingly, Fandom brings this action to secure all relief necessary to stop and fully address the harm suffered by Fandom and Fandom's Employee and to protect Fandom and Fandom Employees, its other staff, its workplace, and its business from further harassment, threats, intimidation, and reputational harm.

### Jurisdiction and Venue

9. This Court has original subject matter jurisdiction over Fandom's claim under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (the "RICO Act" or "RICO") pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Fandom's state law claims because the claims are so related to Fandom's federal claim as to be part of the same case or controversy.

10. Plaintiff Fandom is incorporated in Delaware and has its principal place of business in San Francisco, California. Defendant A.H. is an individual residing in California.

11. This Court has personal jurisdiction over Defendant A.H. because, on information and belief, Defendant is an individual who resides in and is a citizen of California. The IP address associated with the harassing and defamatory Craigslist posts created by Defendant A.H. indicates Defendant is located in a California city known to Fandom but omitted from this First Amended Complaint pursuant to the Court's March 12, 2026 order precluding disclosure of personal information of any identified Defendants in public filings in this action absent further court order.

12. Further, this Court has personal jurisdiction over Defendant A.H. and Does 1–10 because they have purposefully directed their conduct at California and at Fandom's headquarters in San Francisco, including by issuing threats referencing and directed at Fandom and its employees at  Fandom's San Francisco headquarters, by claiming to have traveled to San Francisco as part of a campaign to harass and threaten Fandom and Fandom employee, and by engaging in conduct intended to harm Fandom's operations and employees in California, making it foreseeable that their intentional acts would cause harm in the forum.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Fandom resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District or were purposefully directed at this District, including threats directed at Fandom and its San Francisco headquarters and harms to Fandom's operations and workplace here.

## Divisional Assignment

14.     Pursuant to Civil Local Rules 3-2(d), 3-5, and General Order 44 of this Court, this case, assignment of this case to this Court's San Francisco Division because the action arises in substantial part in the county of San Franscisco, where Fandom is located.

## Parties

15.     Plaintiff Fandom, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Fandom operates online entertainment and community platforms, including websites that host user-generated content and discussion forums.  One of Fandom's online community websites and forums is GameFAQs.

16.     At all relevant times, Fandom employed the Fandom Employee referenced in this First Amended Complaint as part of its community moderation and content-policy enforcement team. Fandom withholds the name, location, and personal identifying details of the Fandom Employee from this public pleading because of ongoing safety and privacy concerns arising from Defendant's conduct.

17.     Upon information and belief, one or more of the Defendants are former registered users of GameFAQs who became disgruntled after one or more of their content was moderated and account access was restricted or terminated for repeated violations of Fandom's policies.  In an effort to locate and identify Defendants, Fandom reviewed IP-address information provided by Craigslist and subscriber records Fandom obtained from the Internet Service Provider (ISP) for those IP addresses, which identified A.H. as the poster of the harassing and defamatory Craigslist posts.

## Factual Background

### *Fandom's Business and Fandom Employee's Role*

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                - 4 -                CASE NO. 3:26-CV-01354-LJC__

18. Fandom operates online entertainment platforms and community forums. One of its platforms is GameFAQs, where users can create content, post messages, and interact with one another regarding video games and related topics of interest. Fandom acquired GameFAQs in or around late 2022.

19. In connection with offering its services, including the GameFAQs services, Fandom employs staff whose responsibilities include moderating user content, enforcing Fandom's community guidelines and policies, and taking action when needed to address content or accounts that violate Fandom's policies.

20. The Fandom Employee referenced throughout this Complaint and targeted by Defendant is one such employee. Fandom Employee's duties include enforcing Fandom's rules relating to prohibited content on GameFAQs, including political content in certain forums, harassment, and other policy violations.

### *Defendants' Dispute with Fandom and Fandom Employee*

21. On information and belief, one or more of the Defendants were previously users of GameFAQs and active on the GameFAQs forums.

22. In or around 2023, following its acquisition of GameFAQs, Fandom implemented policies on GameFAQs restricting political content and other categories of content to align with Fandom's policies restricting such content. As part of this implementation, Fandom closed a GameFAQs discussion board that had been focused on political content. Fandom also subsequently updated its GameFAQs moderation rules to align with these policies.

23. Despite Fandom's policies and in direct violation of them, one or more of the Defendants repeatedly posted content that violated Fandom's policies, including political content, and generally engaged in conduct contrary to Fandom's policies.

24. As a result of one or more Defendants' repeated violations of its policies, in 2024, Fandom, through its moderation personnel, including Fandom Employee, limited, suspended, and/or terminated one or more Defendants' access to certain services or portions of GameFAQs.

25. During this time, Fandom Employee was known to GameFAQs users (including under a username) as a Fandom employee and a moderator and enforcer for Fandom's policies.

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF - 5 - CASE NO. 3:26-CV-01354-LJC

One or more Defendants therefore associated Fandom Employee with, and apparently blamed him for, some or all of Fandom's moderation decisions affecting one or more of the Defendants' access to GameFAQs.

26. Defendants reacted to these moderation actions against their accounts with anger and hostility and began to direct their ire about Fandom's policies not only at Fandom, but directly at Fandom staff, including in particular Fandom Employee.

### *Defendant's Harassment and Threats*

27. Following one or more of the Defendant's restriction from Fandom's services, Fandom believes and therefore alleges that Defendants embarked on a sustained campaign of harassment, intimidation, and retaliation directed at Fandom and Fandom Employee under a variety of pseudonymous usernames, including "Socialmediaisbroken," "SMIB," and other suspected aliases. Defendants' behavior has recently escalated in frequency, intensity, and degree of threat, forcing Fandom to file this action to protect its business and the safety and well-being of its employees.

28. Fandom believes and therefore alleges that one or more Defendants participated in launching several subreddits on the Reddit platform to coordinate and amplify their harassment of Fandom, Fandom Employee, and other Fandom staff, including r/GameFAQsdeathmatch, r/GameFAQsCurrentEvents, r/GameFAQsModeration, r/Tailswasright, r/GameFAQsDramaHub, r/theconglomerate, r/GFconglomerate, and r/April15Twenty24. Defendants used these communities to coordinate their harassment campaign, post abusive language and personal information about Fandom and its staff, encourage intimidation of Fandom moderators and staff, and amplify their impersonation and doxxing behavior. While some of these subreddits were later banned or removed by Reddit (including at Fandom's request), Defendants simply migrated the harassment to other subreddits and other platforms over time, as discussed further below. For example, one or more of the Defendants also participate in the operation of a YouTube account under the username SMIB, available at https://www.youtube.com/@SmibThegod-oz5wx, which has been used to post videos and commentary relating to grievances and the campaign against Fandom and Fandom Employee.

Fandom believes and therefore alleges that Defendants have also taken this harassment campaign to the Discord platform, where one or more Defendants have posted similar harassing messages, including targeting another Fandom employee who filed a police report about the message. Fandom has received evidence from one or more of these platforms indicating that Defendant is not a single individual acting alone in this campaign against Fandom and Fandom Employee, but is instead one or more Defendants, including A.H and Does, coordinating to perpetrate this coordinated conduct.

29.    Beginning in February 2024, one or more Defendants started making statements and threats directed at Fandom and Fandom Employee, primarily on the subreddits they had created. These statements included references to the location of Fandom's headquarters in San Francisco and statements indicating that at least one Defendant was planning to travel to Fandom's offices in order to confront Fandom Employee or other Fandom personnel about Fandom's moderation policies.

30.    In or around August 2024, one Defendant posted threats in a subreddit to "descend on San Francisco" and "establish a command center within relative walking distance of [Fandom's headquarters]." That Defendant explicitly mentioned wanting to confront Fandom Employee as part of this plan, or other Fandom staff in moderation roles.

31.    In a follow-up post in August 2024, the same Defendant claims to have traveled to San Francisco and "opted to set up shop" in a nearby San Francisco neighborhood. While he claimed he was unable to complete his visit to Fandom's headquarters during the trip, he expressed a desire to return to San Francisco, saying "I will never give up. I will never relent."

32.    On or around December 2, 2024, Fandom Employee's mother received a call from a restricted number "threatening to kill her [or the Fandom Employee] if [the Fandom Employee] didn't do something about" Fandom's GameFAQs website.  Fandom believes and therefore alleges that this call came from one of the Defendants.

33.    During this time, Fandom Employee reported the above ongoing conduct to Fandom's Human Resources department, and Fandom took various measures to address the behavior, dedicating time and resources to support Fandom Employee and other staff and ensure

workplace safety and employee wellbeing. When it became clear that Defendant's behavior was escalating to potential in-person harassment at Fandom's offices, Fandom also escalated the matter to consult with federal and local law enforcement as appropriate.

34.    In 2025, Defendants continued and escalated their harassment. For example, Fandom Employee's mother continued to receive harassing phone calls from unknown individual(s) that Fandom believes and therefore alleges were one or more of the Defendants or affiliated with Defendants. Fandom Employee reported these calls to Fandom and directed his mother to file a separate local police report documenting the incident. At this time, Fandom and Fandom Employee became seriously concerned that Defendants' harassment of Fandom and Fandom Employee was now expanding to target Fandom Employee's family members.

35.    Finally, over the last few months, Fandom believes and therefore alleges that Defendants escalated their campaign to cause physical intrusion into Fandom Employee's home and private life. Defendant A.H. has been creating Craigslist posts impersonating Fandom Employee and revealing his location or specific home address to draw strangers to his home to conduct sales or other transactions. In the Craigslist posts, Defendant A.H. (1) states he is Fandom Employee, providing his name and specifying his role at Fandom, (2) claims to be offering an item(s) for sale in exchange for money or, in at least one case, to "trade for sex" with Fandom Employee and/or his spouse, and (3) in at least one post, discloses Fandom Employee's private home address as the transaction location, thus inviting strangers to show up at Fandom Employee's house where he lives with his family. Most recently, Fandom believes and therefore alleges that Defendant A.H. has also begun responding to other Craigslist posts, by impersonating Fandom Employee and explicitly instructing others to go to the employee's home, indicating that they can let themselves into the house. Because Defendant A.H. has made these posts as replies to Craigslist ads and/or in private messages, Fandom and Fandom Employee are unable to ascertain their scope or breadth, but are gravely concerned it is widespread, increasing risk of danger and harm to Fandom Employee and his family.

36.    As a result of these postings by Defendant A.H., multiple strangers have come to Fandom Employee's residence, including multiple times in January and February 2026, in

apparent response to Defendant A.H.'s Craigslist ads. These strangers became verbally aggressive with Fandom Employee's spouse and caused severe distress to Fandom Employee and his family.

37.     On February 12, 2026, for example, an individual showed up to Fandom Employee's residence due to Defendants' harassment campaign and specifically as a result of Defendant A.H.'s Craigslist posting. This individual claimed that he had received a response to his own Craigslist post, providing Fandom Employee's address and instructing him to come to Fandom Employee's address to complete a trade of goods. The responder even told this individual to let himself into the residence. Fandom believes and therefore alleges that Defendant A.H. or one of his co-conspirator Defendants is the person who responded to this individual and directed him to intrude upon Fandom Employee's private life and home.

38.     On February 20, 2026, another person showed up at Fandom Employee's house and attempted to enter the home at the request and instruction of a purported buyer, impersonating Fandom Employee. This person walked around Fandom Employee's house, opened the door to Fandom Employee's attached, covered porch, and attempted multiple times to open the door to Fandom Employee's home. The individual showed Fandom Employee's spouse, who was home at the time of the incident, text messages between the individual and an unknown buyer who claimed to be Fandom Employee.  In these text messages, the unknown buyer: 1) identifies himself as Fandom Employee; 2) states he is a "quality manager at fandom;" 3) provides Fandom Employee's home address, and 4) encourages the individual enter the home to complete the sale by claiming he is "disabled" and unable to drive. Fandom believes and therefore alleges that Defendant A.H. or one of his co-conspirator Defendants is the purported buyer who responded to this individual and directed him to intrude upon Fandom Employee's private life and home.

39.     On or around February 26, 2026, yet another individual showed up at Fandom Employee's home, claiming to be a seller on Craigslist who was responding to a reply from a potential buyer. The potential buyer had identified himself as a Fandom Employee and had instructed the seller to go to Fandom Employee's residence to complete the sale. The buyer also claimed to have a disability and told the seller that if he did not answer the door, Fandom Employee's spouse would, and provided the real first name of Fandom Employee's spouse.

Fandom believes and therefore alleges that Defendant A.H. or one of his co-conspirator Defendants is the purported buyer who responded to this individual and directed him to intrude upon Fandom Employee's private life and home.

40.     Fandom and Fandom Employee have dedicated extensive time and resources to reporting Defendant A.H.'s posts to Craigslist, getting the harassing ads removed, and engaging with local law enforcement where Fandom Employee lives to ensure the safety and well-being of his family.

41.     At all times, Defendants have tied their threats and harassment of Fandom and Fandom Employee to Fandom's moderation policies and decisions, expressly blaming Fandom and its personnel for closing or changing forums and for removing their content.

42.     Defendants' conduct has been deliberate and hostile and has escalated in severity and frequency. They have continued this campaign across multiple platforms, online and in person through third parties, and are using different accounts and channels to evade reporting and to expand the impact of their harassment and the harm they are causing.

***Defendants Have Caused and Are Causing Severe Harm to Fandom and Fandom Employee***

43.     Defendants' conduct has caused and is continuing to cause Fandom Employee severe harm. Defendants' yearslong campaign of threatening and harassing posts has taken a significant toll on Fandom Employee, causing severe emotional distress and fear and reputational harm. And the most recent doxing of the Fandom Employee's home address, coupled with false and sexualized advertisement(s) and posts inviting strangers to contact or visit Fandom Employee, has created a real and ongoing risk that Defendants or other unknown individuals will arrive at Fandom Employee's home or otherwise contact him or his family in a dangerous or exploitative manner.

44.     The presence of strangers at or near the employee's home, the harassment directed at members of the employee's household, and the continuing threat of further incidents have caused severe emotional distress to the Fandom Employee. The Fandom Employee's sense of safety and security has been significantly undermined, affecting the employee's ability to carry

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                   - 10 -                   CASE NO. 3:26-cv-01354-LJC__

out job duties and to participate in Fandom's public-facing moderation and community-management roles.

45. Defendants' conduct has also directly harmed Fandom. Fandom's ability to provide a safe and secure workplace for its employees is essential to its operations. Defendants' false and defamatory impersonation of Fandom Employee and statements that he, someone who works for Fandom, is trading goods for sex on Craigslist are harmful to Fandom's reputation and business. Defendants' threats, harassment, and doxing of Fandom Employee have also created a credible risk of harm reasonably perceived as connected to Fandom Employee's work for Fandom. The threats and ongoing fear experienced by the Fandom Employee have also impaired his, and by extension Fandom's, ability to perform essential moderation functions on GameFAQs and other Fandom sites. Fandom has also had to alter work assignments, adjust how its employees interact with online communities, and implement additional safety-related practices to reduce the risks posed by Defendants' conduct. And Fandom has been forced to divert substantial time, attention, and resources away from its ordinary business operations to address the ongoing libel, harassment, and threats, including by assessing risks to its personnel and facilities and taking remedial and protective measures internally, with law enforcement, and now with this lawsuit.

46. Defendants' conduct thus has caused and continues to cause economic, reputational, and related harm to Fandom, including costs associated with responding to and mitigating the effects of Defendants' harassment, disruption of Fandom's moderation and community operations, and harm to Fandom's interest in maintaining a safe and effective workplace.

**FIRST CAUSE OF ACTION**

**Defamation (Libel Per Se)**
**(On Behalf of Fandom and Fandom Employee)**

47. Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

48. Fandom presents this claim on behalf of itself and Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom

employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

49.     On information and belief, in or around January 2026, Defendant A.H. and/or one or more of his co-conspirator Defendants began impersonating Fandom Employee and publishing postings on Craigslist and other online platforms. In at least one post, Defendant A.H. impersonated Fandom Employee and falsely represented that he was offering goods in exchange for money or would "trade for sex" with Fandom Employee and/or his spouse.

50.     The post included personal identifying information–including Fandom Employee's full name, his role as a Fandom employee and approximate location of Fandom Employee's home–sufficient for readers to understand that the posting referred to Fandom Employee.

51.     The statements in the posting were false. Fandom Employee never offered sexual services or exchanges of any kind as stated in the post.

52.     Defendant A.H. published the statements to members of the public through Craigslist and potentially other online channels unknown to Fandom and/or Fandom Employee.

53.     As a direct result of this and other posts, unknown and uninvited persons have responded by appearing at or near Fandom Employee's residence.

54.     The false post exposed Fandom Employee to invasion of privacy, humiliation, embarrassment, emotional distress, fear, and turmoil and tended to injure him, his family members, and his occupation and reputation. The statement also exposed Fandom and Fandom Employee to severe reputational harm.

55.     The statements falsely imputed sexual conduct with moral turpitude implications, constituting defamation per se.

56.    Defendant A.H. knew the statements were false or acted with reckless disregard for their truth.

57.    Defendant A.H. acted with malice, oppression, and fraud, intending to harm Fandom Employee and Fandom and disrupt Fandom's business.

58.    As a direct and proximate result of Defendant A.H.'s defamatory statements, the Fandom Employee has suffered severe emotional distress, fear for personal and family safety, and substantial disruption to personal and professional life, which has materially impaired and harmed Fandom Employee's ability to perform essential job duties for Fandom and has required Fandom to adjust work arrangements and take additional safety-related measures to ensure Fandom Employee's safety and physical and mental wellbeing.

59.    As a direct and proximate result of Defendant A.H.'s defamatory statements, Fandom has been directly harmed. That harm includes, without limitation, the diversion of resources needed to address the consequences of Defendant A.H.'s conduct; the impact on Fandom Employee's availability and ability to perform critical moderation functions; and the negative effect on Fandom's ability to maintain a safe, stable, and effective workplace free from the humiliation, emotional distress, and disruption caused by Defendant A.H.'s statements.

**SECOND CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**
**(On Behalf of Fandom Employee)**

60.    Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

61.    Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) Fandom Employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of Fandom Employee relate to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing

the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

62.    Defendant A.H. has engaged in extreme and outrageous conduct by, among other things, publicly disseminating Fandom Employee's private identifying information; impersonating Fandom Employee in false and sexualized advertisements and posts; inviting strangers to contact or visit the employee at home and providing his private personal home address for such contact; expanding harassment to members of Fandom Employee's family; and tying all of these actions to threats and statements directed at Fandom and its staff, headquarters, and business, due to Fandom's enforcement of its moderation policies.

63.    Defendants intended to cause, or acted with reckless disregard of the probability of causing, severe emotional distress to the Fandom Employee.

64.    As a direct and proximate result of Defendants' conduct, the Fandom Employee has suffered severe emotional distress, fear for personal and family safety, and substantial disruption to personal and professional life.

65.    The severe emotional distress and fear experienced by Fandom Employee have materially impaired and harmed the employee's ability to perform essential job duties for Fandom and have required Fandom to adjust work arrangements and take additional safety-related measures to ensure Fandom Employee's safety and physical and mental well-being.

66.    Fandom has been directly harmed by Defendants' intentional infliction of emotional distress on its employee. That harm includes, without limitation, the diversion of resources needed to address the consequences of Defendants' conduct; the impact on the employee's availability and ability to perform critical moderation functions; and the negative effect on Fandom's ability to maintain a safe, stable, and effective workplace.

67.    Defendants' conduct was malicious, oppressive, or in conscious disregard of the rights and safety of others, and warrants an award of punitive or exemplary damages.

### THIRD CAUSE OF ACTION

**Intrusion Upon Seclusion / Invasion of Privacy**
**(On Behalf of Fandom Employee)**

68.    Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

69.    Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

70.    Defendant A.H., intentionally intruded into the private life and affairs of the Fandom Employee by obtaining, using, and publicly disseminating private identifying information, including the employee's home address and/or sufficiently specific location details.

71.    Defendant A.H. disclosed Fandom Employee's personal information in posts designed to draw unknown third parties to Fandom Employee's home under deceptive and potentially dangerous circumstances.

72.    Fandom Employee had a reasonable expectation of privacy with respect to the his private home address and the sanctity of his residence and family life.

73.    Defendant A.H.'s intrusion into Fandom Employee's private affairs would be highly offensive to a reasonable person.

74.    Defendant A.H.'s intrusion has caused Fandom Employee significant emotional distress and fear for personal and family safety and has resulted in actual physical intrusions and harassment by unknown third parties at or near the employee's home.

75.    Fandom has been directly harmed by this intrusion upon the privacy of its employees because it undermines Fandom's ability to provide a safe working environment, impairs the employee's ability to perform job duties, and forces Fandom to divert resources and attention to mitigating the ongoing risks created by Defendant A.H.'s conduct.

76.     Defendant A.H.'s conduct was malicious, oppressive, or in conscious disregard of the rights and safety of others, justifying an award of punitive or exemplary damages.

**FOURTH CAUSE OF ACTION**

**False Light Invasion of Privacy**
**(On Behalf of Fandom Employee)**

77.     Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

78.     Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

79.     Defendant A.H. publicly disseminated postings and online content impersonating Fandom Employee and portraying him in a false and highly offensive light, including specifically by falsely representing that Fandom Employee was seeking to trade goods for sex, and specifically identifying him as an employee of Fandom.

80.      Defendant A.H.'s postings impersonated Fandom Employee and included identifying information sufficient for viewers to believe the postings were created by or accurately described him.

81.     The portrayal was false.

82.     Defendant A.H. was negligent in determining the truth of the publicized information and/or acted with reckless disregard for the truth or falsity of the publicized information and the false light in which Fandom Employee would be placed.

83.     Defendant A.H. acted with malice and intent to humiliate, endanger, and harm Fandom Employee and disrupt Fandom's business.

84.    Defendant A.H.'s conduct would be highly offensive to a reasonable person.

85.    As a direct and proximate result, Fandom Employee suffered fear, emotional distress, humiliation, reputational harm, dignitary harm, and loss of privacy and security in his home.

86.    Fandom has been directly harmed by Defendant A.H.'s false light portrayal of its employee because the safety and reputation of its employee are integral to the employee's ability to carry out Fandom's moderation functions, and the harassment has impaired Fandom's operations and necessitated protective measures.

87.    Defendant A.H.'s conduct was malicious, oppressive, or in conscious disregard of the rights and safety of others, supporting an award of punitive or exemplary damages.

## FIFTH CAUSE OF ACTION

### Public Disclosure of Private Facts
### (On Behalf of Fandom Employee)

88.    Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

89.    Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

90.    Defendant A.H. publicly disclosed private facts about Fandom Employee, including the employee's full name and home address and/or sufficiently specific location information, by posting or causing to be posted such information on public websites and platforms.

91.    The disclosed information was not of legitimate public concern and was not publicly disseminated by Fandom Employee.

92.    Defendant A.H. publicized this private information to the general public via online postings and digital platforms.

93.    Defendant A.H.'s disclosure resulted in members of the public appearing at Fandom Employee's residence and contacting him.

94.    Defendant A.H.'s conduct would be highly offensive to a reasonable person.

95.    Defendant A.H. acted intentionally and with reckless disregard for Fandom Employee's safety, privacy, and security.

96.    As a direct and proximate result, Fandom Employee suffered fear, emotional distress, humiliation, reputational harm, and loss of privacy and security in his home

97.    Fandom has been directly harmed by Defendant A.H.'s public disclosure of private facts of its employee because the safety and reputation of its employee are integral to the employee's ability to carry out Fandom's moderation functions, and the harassment has impaired Fandom's operations and necessitated protective measures.

98.    Defendant A.H.'s conduct was malicious, oppressive, or in conscious disregard of the rights and safety of others, supporting an award of punitive or exemplary damages.

## SIXTH CAUSE OF ACTION

### Harassment under CCP § 527.6
### (On Behalf of Fandom Employee)

99.    Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

100.    Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the

Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

101.    Defendant A.H. has knowingly and willfully subjected Fandom Employee and other Fandom employees to a continuous course of intimidation and harassment, including by publicly disseminating Fandom Employee's private identifying information; impersonating the employee in false and sexualized advertisements and posts; inviting strangers to contact or visit the employee at home; expanding harassment to his family members; and attempting to visit Fandom Employee at Fandom's headquarters.

102.    Defendant A.H.'s intimidating and harassing conduct serves no legitimate purpose.

103.    Defendant A.H.'s intimidating and harassing conduct is extreme and outrageous and would cause any reasonable person to suffer substantial emotional distress.

104.    Defendant A.H.'s harassment has caused Fandom Employee significant emotional distress and fear for personal and family safety and has resulted in actual physical intrusions and harassment by unknown third parties at or near the employee's home.

105.    Defendant A.H.'s ongoing campaign of harassment, doxing, and threats creates a continuing risk to the safety of Fandom Employee, other Fandom staff, and Fandom's workplace.

106.    Fandom, as the employer, has a strong and legitimate interest in protecting its employees and its workplace from workplace-connected threats, harassment, and violence and in ensuring that employees can perform their duties without fear of harm.

107.    Fandom is entitled to injunctive and other equitable relief restraining Defendant A.H. from further harassing, threatening, or contacting the Fandom Employee or other Fandom employees.

**SEVENTH CAUSE OF ACTION**

**Doxing Under CCP § 1708.89**
**(On Behalf of Fandom Employee)**

108.    Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

109. Fandom presents this claim on behalf of Fandom Employee. Fandom has standing to present this claim on behalf of the Fandom Employee because: 1) the Fandom employee would otherwise have standing to sue in his own right; 2) the privacy and safety issues Fandom seeks to vindicate on behalf of its employee relates to its purpose of safely operating its online platforms and community forums; 3) neither the claim asserted nor the relief requested requires the participation of the Fandom Employee in the lawsuit; and 4) safety obstacles exist preventing the Fandom Employee from asserting this claim in his own right. Fandom has also suffered an injury in fact.

110. Defendant A.H. intentionally and publicly posted on various online platforms Fandom Employee's personal identifying information, including his full legal name, home address, and other identifying information sufficient to locate his residence.

111. Defendant A.H. disclosed Fandom Employee's personal identifying information without his consent.

112. Defendant A.H. disclosed Fandom Employee's personal identifying information with the intent of placing him in reasonable fear for his safety and/or the safety of his immediate family.

113. Defendant A.H. made these disclosures for the purpose of causing Fandom Employee unwanted physical contact, injury, or harassment by third parties. Defendant's postings encouraged third parties to visit Fandom Employee's home, led others to believe he was willing to trade for sex, and resulted in actual physical intrusions and harassment by unknown third parties at or near the employee's home.

114. Defendant A.H.'s doxing of Fandom Employee has caused Fandom Employee significant emotional distress and fear for his personal and family safety.

115. Fandom has been directly harmed by Defendant A.H.'s doxing of its employee because the safety and reputation of its employee are integral to the employee's ability to carry out Fandom's moderation functions, and the harassment has impaired Fandom's operations and necessitated allocation of substantial resources to implement protective measures.

116. Defendant's conduct was malicious, oppressive, and/or in conscious disregard of the rights and safety of others, justifying an award of punitive or exemplary damages.

## EIGHTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations
### (On Behalf of Fandom)

117. Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

118. Fandom has a protected and valuable interest in its business relationships, including with its employees, which are governed by employment contracts. At all relevant times alleged herein, the Fandom Employee had an employment contract with Fandom.

119. Defendants have at all relevant times aware that Fandom Employee was employed by Fandom. Indeed, after one or more Defendants' privileges as a GameFAQs user were restricted and/or terminated, Defendants intentionally targeted Fandom Employee because of his employment relationship with Fandom and his performance of moderation duties on Fandom's behalf.

120. Defendants engaged in a course of conduct designed to disrupt the contractual relationship between Fandom and Fandom Employee, including but not limited to publicly posting Fandom Employee's name and home address online and making threatening statements directed at Fandom Employee, which referenced his employment with Fandom, and traveling to Fandom headquarters with the intent of confronting Fandom Employee.

121. As a direct and proximate result of Defendants' actions, the employment relationship between Fandom and Fandom Employee has been substantially disrupted and harmed. Fandom has worked with Fandom Employee to modify Fandom Employee's job duties, alter work assignments, and implement security measures as needed, which has resulted in significant diversion of company resources to address the threats and harassment and protect Fandom Employee's physical and mental safety and well-being.

122. Defendants' conduct has also impaired Fandom Employee's ability to perform his contractual duties safely in the ordinary course and made performance of his duties more difficult.

123.     As a direct and proximate result of Defendants' interference, Fandom has suffered damages in an amount according to proof at trial, including but not limited to diverted resources, operational disruption, loss of productivity, and related economic harm.

124.     Defendant acted intentionally, maliciously, and with conscious disregard of Fandom's rights, entitling Fandom to an award of punitive damages.

## NINTH CAUSE OF ACTION

**Violation of Racketeer Influenced and Corrupt Organizations Act (RICO)**

(18 U.S.C. §§ 1962(c) and 1962(d))

125.     Fandom realleges and incorporates by reference the preceding paragraphs as though fully set forth here.

126.     Defendant A.H. and co-conspirators Does 1-10 constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), specifically, an association-in-fact enterprise, with an ascertainable structure and continuing organization, including coordinated roles, all directed toward and formed for the common purpose of injuring Fandom and the Fandom Employee through coordinated unlawful acts (the "Enterprise"). On information and belief,  the Enterprise is an ongoing organization whose members function as a continuing unit and that exists separate and apart from the individual predicate acts alleged herein.

127.     Fandom believes and therefore alleges that the Enterprise operates with an ascertainable structure and division of roles. Members of the Enterprise create, administer, and moderate online communities and channels devoted to attacking Fandom and Fandom Employee; draft and post abusive, threatening, and impersonating content; collect and disseminate private identifying information; and coordinate harassment and impersonation campaigns across multiple platforms.  The Enterprise's common purposes include: (a) harassing and intimidating the Fandom Employee; (b) injuring Fandom's business reputation by associating it with explicit and defamatory content and conduct; (c) threatening and/or coercing Fandom and Fandom Employee through threats of physical intrusion and physical harm; and (d) evading detection through the use of anonymous and pseudonymous accounts, cross-platform coordination, and concealment of participants' identities.

128.     The Enterprise's activities are in or affect interstate and foreign commerce because its members use the internet, interactive computer services, social media platforms, and electronic communications to carry out all phases of the scheme across state lines.

129.     Defendant A.H. and Does 1-10 were each associated with the association-in-fact enterprise and conducted or participated, directly or indirectly, in a "pattern of racketeering activity" as defined by 18 U.S.C. §§ 1961(1) and 1961(5).  Fandom believes and therefore alleges that Defendants exercised direction and control over, and performed essential functions for, the Enterprise by, among other things, creating and administering online forums used to coordinate harassment, selecting targets and escalation tactics, posting and amplifying impersonating and doxing content, and determining when to move from online threats to in-person intimidation, including directing third parties to physically appear at the Fandom Employee's home.  The pattern of racketeering activity consists of the following multiple related and continuous predicate acts, each of which is expressly enumerated in 18 U.S.C. § 1961(1)(B):

      a.  **Predicate Act 1: Wire Fraud (18 U.S.C. § 1343).**

130.     Defendants knowingly devised, intended to devise, and executed a scheme and artifice to defraud by using materially false and misleading online communications to impersonate Fandom Employee, falsely represent that Fandom Employee and/or his spouse were soliciting sexual activity or engaging in transactions involving sex, falsely associate those solicitations with Fandom by expressly identifying Fandom Employee as a Fandom employee, and induce members of the public to rely on those misrepresentations by contacting, responding to, or traveling to and intruding upon Fandom Employee's residence.

131.     Defendants knew these representations were false when made, intended that recipients of the communications believe and act on them, and acted with the specific intent to deceive online users and to injure Fandom's business and property interests, including the economic value of its reputation, goodwill, employee productivity, workplace safety, and operational resources.

132.      For the purpose of executing and attempting to execute the scheme, Defendants transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means

of wire, radio, or television communication in interstate commerce, including without limitation through Craigslist, Reddit, YouTube, Discord, social media platforms, interactive computer services, electronic messages, and related internet infrastructure. The wire transmissions were material to and in furtherance of the scheme because they disseminated the false advertisements and impersonating messages, concealed Defendants' identities, expanded the audience for the fraud, and caused third parties to appear at, contact, and even intrude upon Fandom Employee's home.

133.    Representative examples of Defendants' wire transmissions include the following: in January and February 2026, Defendant A.H. used Craigslist posts, responses, and related electronic messages to impersonate Fandom Employee, identify him by name and/or as a Fandom employee, provide or reference his home address, and falsely represent that he was offering goods, soliciting sexual activity, or inviting strangers to his residence. These communications included, without limitation, messages that caused third parties to appear at Fandom Employee's home on or about February 12, February 20, and February 26, 2026. In those communications, the impersonating sender provided Fandom Employee's address, instructed or encouraged recipients to go to or enter the residence, claimed to be Fandom Employee or a Fandom employee, and, in at least one instance, used the real first name of Fandom Employee's spouse. On information and belief, Defendant A.H. or one or more co-conspirator Defendants transmitted or caused the transmission of these communications.

134.    As a direct and foreseeable result, Fandom was deprived of money and property interests and suffered business and property injury, including diverted personnel time, investigation and mitigation costs, security-related expenditures, operational disruption, impairment of employee services, and injury to reputation and goodwill.

135.    Each posting, upload, transmission, republication, response to a third-party advertisement, electronic message, or other wire communication made in furtherance of the scheme constitutes a separate act of wire fraud. Section 1343 is expressly enumerated in 18 U.S.C. § 1961(1)(B).

b.    **Predicated Act 2: Identity Fraud (18 U.S.C. § 1028)**.

136. Section 1028, relating to fraud and related activity in connection with identification documents and information, is expressly enumerated in 18 U.S.C. § 1961(1)(B). Defendants knowingly transferred, possessed, and used, without lawful authority, one or more means of identification of another person, including Fandom Employee's name, employment title or role, workplace affiliation with Fandom, home address, spouse's first name, and other personal identifying information sufficient to identify, locate, impersonate, and direct third parties to Fandom Employee and his household.

137. Defendants used that identifying information without Fandom Employee's consent and without any lawful authorization, and did so during and in relation to the unlawful scheme alleged herein, including the impersonating Craigslist advertisements and responses, false sexualized solicitations, doxing, wire fraud, threats, harassment, and coordinated efforts to cause strangers to contact or physically appear at Fandom Employee's residence.

138. Defendants acted knowingly and with the intent to commit, aid, and abet, and facilitate unlawful activity, including wire fraud in violation of 18 U.S.C. § 1343, doxing, invasion of privacy, harassment, and related unlawful conduct.

139. Defendants' unauthorized use of Fandom Employee's identifying information was material to the scheme because it made the impersonating communications appear authentic, enabled Defendants to falsely hold themselves out as Fandom Employee, induced third parties to rely on the impersonation, directed third parties to Fandom Employee's home, and amplified the harm to Fandom and Fandom Employee.

140. Representative examples of Defendants' unauthorized use of Fandom Employee's means of identification include the following: in January and February 2026, Defendants used Fandom Employee's name, Fandom employment affiliation, home address, spouse's first name, and other identifying information in Craigslist posts, responses, and related electronic messages to impersonate Fandom Employee and direct third parties to his residence. This unauthorized use included communications that caused third parties to appear at Fandom Employee's home on or about February 12, February 20, and February 26, 2026, including messages identifying the sender as Fandom Employee or a Fandom employee, providing Fandom Employee's home

address, claiming disability-related reasons for requiring recipients to come to or enter the residence, and referring to Fandom Employee's spouse by her real first name. On information and belief, Defendant A.H. or one or more co-conspirator Defendants used, transferred, possessed, or transmitted that identifying information without lawful authority.

141. The conduct affected interstate commerce because Defendants used interstate internet platforms, electronic messages, interactive computer services, social media platforms, telecommunications networks, and related infrastructure to transfer, possess, use, transmit, publish, and republish the identifying information.

142. As a direct and foreseeable result, Fandom suffered injury to its business and property, including diverted personnel time, investigation and mitigation costs, security-related expenditures, operational disruption, impairment of employee services, and harm to reputation and goodwill. Each unauthorized posting, upload, message, response, republication, transmission, or other use, transfer, or possession of Fandom Employee's means of identification in furtherance of the scheme constitutes a separate predicate act under 18 U.S.C. § 1028(a)(7).

143. The predicate acts described above are related because they share the same participants (Defendants), the same victims (Fandom and Fandom Employee), the same purpose (injury to Plaintiff's business and Employee's reputation through a coordinated campaign of impersonation and coercion), and the same methods (electronic communications and interactive computer services). The predicate acts are also continuous: they were repeated over a period of months, were not isolated or sporadic, and by their nature pose a continued and ongoing threat of repetition.

144. Defendants A.H. and Does 1–10 each conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity alleged above, including by creating, transmitting, posting, republishing, responding to, coordinating, amplifying, or concealing fraudulent, impersonating, threatening, and doxing. Defendants' participation was not merely incidental; each Defendant exercised some degree of direction over, or knowingly carried out essential functions for, the Enterprise by using online accounts, interactive computer services, electronic communications, aliases, and coordinated

activity to further the Enterprise's common objectives and to execute the predicate acts alleged herein.

145.    Defendants A.H. and Does 1–10 also conspired with one another within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c). On information and belief, each Defendant knew the general nature and purpose of the Enterprise, understood that the Enterprise's affairs would be conducted through repeated racketeering activity, and agreed that at least one member of the conspiracy would commit two or more predicate acts in furtherance of the Enterprise. Defendants further agreed to pursue the Enterprise's common objectives, including harassing and intimidating Fandom Employee, injuring Fandom's business reputation and goodwill, coercing Fandom to alter its moderation and business practices, causing Fandom to expend money and resources, and concealing or obscuring Defendants' identities and coordination. In furtherance of that agreement, Defendants committed, attempted to commit, aided and abetted, caused, or facilitated the predicate acts alleged above, including wire fraud, and identity-fraud-related conduct.

146.    Fandom's injuries were directly and proximately caused by Defendants' predicate acts and the Enterprise's pattern of racketeering activity. Those injuries are concrete injuries to Fandom's own business and property and include, without limitation, diverted employee and management time, investigation and mitigation costs, legal and security-related expenditures, operational disruption, impairment of employee services and productivity, interference with moderation and community-management operations, costs associated with workplace-safety measures, and injury to the economic value of Fandom's reputation and goodwill. These injuries were the intended and foreseeable result of Defendants' scheme because Defendants repeatedly tied their conduct to Fandom's moderation policies, identified Fandom as Fandom Employee's employer, targeted Fandom's headquarters and online services, and sought to coerce or punish Fandom for its business decisions. Fandom's injuries are independent of, and not merely derivative of, injuries suffered by Fandom Employee or his family. Fandom therefore has standing to assert a civil RICO claim as a person injured in its business or property by reason of Defendants' violations of 18 U.S.C. § 1962.

147.    By reason of the Defendants' violation of 18 U.S.C. § 1962(c)-(d), Fandom suffered injuries in an amount to be determined at trial.

148.    Pursuant to 18 U.S.C. § 1964(c), Fandom is entitled to treble damages.

149.    In bringing this action, Fandom has and will incur attorneys' fees and is entitled to an award of reasonable attorneys' fees under 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fandom, Inc. respectfully prays for judgment against Defendant A.H. as follows:

A.    For compensatory damages in an amount to be proven at trial, including damages for the harms to Fandom arising from Defendant's harassment and threats toward the Fandom Employee and Fandom;

B.    For punitive and exemplary damages in an amount sufficient to punish Defendant and deter similar misconduct;

C.    For preliminary and permanent injunctive relief prohibiting Defendant, and anyone acting in concert with him, from:

(1) Harassing, threatening, or contacting the Fandom Employee, any member of the employee's household, or any Fandom employee in connection with their work at Fandom;

(2) Publishing or causing to be published the Fandom Employee's private identifying information, including home address, phone number, or other personally identifying information;

(3) Posting or causing to be posted any content falsely representing that the Fandom Employee is seeking to engage in sexual activity or to trade sex, or otherwise impersonating or misrepresenting the Fandom Employee online; and

(4) Posting or causing to be posted any content that encourages or invites third parties to contact, visit, or approach the Fandom Employee or the employee's household;

D.      For an order authorizing Fandom, subject to appropriate protections and on an expedited basis, to serve subpoenas or discovery requests on specified third-party platforms, service providers, and ISPs to obtain information sufficient to identify Defendant so that he may be named and served in this action;

E.      For treble damages pursuant to18 U.S.C. § 1964(c)

F.      For costs of suit incurred herein;

G.      For reasonable attorneys' fees where authorized by law; and

H.      For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Fandom, Inc. demands a trial by jury on all issues so triable.


Respectfully submitted,
TYZ LAW GROUP PC


Dated: June 25, 2026

*/s/Ciara McHale*
Ciara McHale

Attorneys for Plaintiff
Fandom, Inc.